IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| C. CHARLES GALLO, | ) |
| CDC PRODUCTS, INC., | ) |
| and | ) Civil Action No. 7:20CV00313 |
| QUALITY INNOVATIONS, LLC, | ) **MEMORANDUM OPINION** |
| Plaintiffs, | ) By: Hon. Glen E. Conrad |
| v. | ) Senior United States District Judge |
| DIVERSITECH CORPORATION, | ) |
| Defendant. | ) |

Plaintiffs C. Charles Gallo, CDC Products, Inc., and Quality Innovations, LLC, filed the present action against DiversiTech Corporation asserting the following counts: (1) breach of a non-disclosure agreement; (2) false association/false endorsement; (3) false advertising of source and/or origin; (4) unfair competition; and (5) unauthorized use of Gallo's name and likeness. DiversiTech has filed a partial motion to dismiss Count One pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and is ripe for review.

## **Background**

The following facts are taken from the Amended Complaint and are construed as true for purposes of this motion. Hall v. DIRECTV, LLC, 846 F.3d 757, 765 (4th Cir. 2017) ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.").

In 1995, Gallo invented a new design for a portable drain cleaning tool. (Am. Compl. ¶ 13, ECF No. 37.) The plaintiffs assert that the tool "has become ubiquitous in the HVAC industry." (Id.) The drain cleaning tool allows users to easily direct pressurized gas into a condensate drain line to clean out debris clogging the drain. (Id.) Before Gallo's invention, the most common way to unclog a condensate drain required use of large and heavy gas tanks that were difficult to maneuver through the attics and crawl spaces where HVAC condensate pipes often are located. (Id. ¶ 14.) Gallo's invention solved this problem by substituting the large gas tanks with handheld $CO_2$ cartridges. (Id. ¶ 15.)

Gallo successfully applied for two patents—Nos. 5,803,101 and 5,996,597 (the "Patents")—for his invention. (Id. ¶ 16.) Gallo assigned the Patents to the corporation he owns, CDC Products, Inc., and began marketing and selling the drain cleaning product to the public. (Id. ¶ 17.) Gallo originally called his invention the "Gallo Gun."

To help market the Gallo Gun, Gallo entered into a licensing agreement with DiversiTech in 1998 (the "License Agreement"). (Id. ¶¶ 18–19.) Under the License Agreement, DiversiTech assumed marketing and distribution of the Gallo Gun nationwide and CDC Products would receive royalties equaling 10% of sales. (Id. ¶ 19.) The parties agreed that the License Agreement would end upon expiration of the patents. In 2010, the Gallo Gun was renamed the "Charles Gallo Gun" to resolve a dispute with Gallo Winery. (Id. ¶ 20.) Gallo thereafter assigned his trademark rights in "Charles Gallo" to DiversiTech to market the product and compatible $CO_2$ cartridges under that mark (the "Trademark Assignment"). (Id.) Under the Trademark Assignment, DiversiTech's rights to the "Charles Gallo" trademark terminated upon expiration of the Patents and reverted to Gallo. (Id.)

Gallo's invention achieved significant success between 1998 and 2016, averaging over $7,00,000 in annual national sales of the Charles Gallo Gun and cartridges during peak years and "gaining industry acclaim." (Id. ¶ 21.) The plaintiffs assert that Gallo "obtained significant name recognition in the HVAC industry nationwide for his invention" and that "the 'Charles Gallo' mark obtained secondary meaning." (Id.)

The plaintiffs assert that during the License Agreement's term, Gallo and his company CDC Products began to grow concerned that DiversiTech' strategy of manufacturing the Charles Gallo Gun using cheap parts was harming the Charles Gallo brand. (Id. ¶ 22.) CDC Products and Gallo thus began to contemplate exiting their relationship with DiversiTech following the Patents' expiration. (Id.) Accordingly, Gallo and CDC Products began to confidentially develop a new model of the Charles Gallo Gun. (Id. ¶ 23.)

The plaintiffs maintain that CDC Products' industry knowledge, research, and testing all demonstrated that a 20-gram $CO_2$ drain cleaner would function as a more effective design for HVAC and plumbing. (Id.) Indeed, a 20-gram $CO_2$ drain cleaner had 25% more volume than the 16-gram product, enough to provide two full drain-clearing blasts per cartridge in a standard HVAC condensate drain, while the 16-gram model allowed for only one full blast. (Id.) The plaintiffs assert that no drain cleaner on the market at that time utilized a 20-gram $CO_2$ cartridge. (Id.) CDC Products therefore began designing a novel drain gun with a 20-gram $CO_2$ cartridge. (Id.) CDC Products also designed a version of the drain gun that would operate interchangeably with both the original 16-gram $CO_2$ cartridge and the new 20-gram $CO_2$ cartridge for increased pressure, effectiveness, and performance. (Id.)

To account for the added power associated with the new 20-gram $CO_2$ blast, CDC Products also re-designed the Charles Gallo Gun with "improved durable components." (Id.) CDC

3

Products secured suppliers that would provide parts and cartridges at a cost that would allow for CDC Products to price the new product at a competitive level with DiversiTech's 16-gram model. (Id.) Additionally, CDC Products "developed a marketing strategy that included the well-recognized trademark 'Charles Gallo' and the goodwill associated with it, and product names such as '20 Mag,' 'Mag 20,' 'AR 20,' or "Big Shot" to appeal to most tradesmen's familiarity with hunting and firearms and to indicate improved performance. (Id.) Collectively, the plaintiffs deem these developments as the "Confidential Information." (Id.)

The plaintiffs also maintain that throughout the inception and development of the Confidential Information, CDC Products protected the Confidential Information and did not reveal it to anyone absent use of a non-disclosure agreement. (Id. ¶ 24.) CDC Products also secured the Confidential Information on its password-protected computer database, which was not accessible by other persons. (Id.) Indeed, the plaintiffs note that "[b]ecause CDC [Products] is a one-person company, there was no inherent risk of an improper internal disclosure." (Id.) The plaintiffs allege that CDC Products began to plan to roll out the next generation Charles Gallo Gun and began to consider new partners to help with marketing and distribution. (Id.)

The plaintiffs contend that "[u]pon completing the prototypes and drawings, CDC [Products] kept its Trade Secrets out of the public eye and did not disclose it to DiversiTech." (Id. ¶ 24.) Soon after the Patents expired, DiversiTech contacted Charles Gallo and CDC Products to discuss entering into a new long-term arrangement that would allow DiversiTech to begin licensing Charles Gallo's name again in connection with the development and sale of the next generation Charles Gallo Gun. (Id. ¶ 25.) At an April 17, 2017, meeting between CDC Products and DiversiTech, the parties signed a Non-Disclosure Agreement ("NDA") prior to CDC Products' disclosure of the Trade Secrets. (Id. ¶ 26.)

The plaintiffs assert that under the NDA, DiversiTech could not use CDC Products' Trade Secrets or any other propriety information for its own commercial benefit. (Id. ¶ 27.) Indeed, "[u]se of any proprietary information disclosed by CDC [Products] could only 'be used solely in connection with the obligations undertaken in' the NDA, or if . . . DiversiTech otherwise reached agreement with CDC [Products] on suitable terms regarding their use." (Id.) (quoting Am. Compl. Ex. D.) The plaintiffs further contend that this proscription applied "regardless of whether the confidential information was marked 'Confidential.'" (Id.) The NDA identifies seven categories of documents for which its protections do not apply. (Am. Compl. Ex. D ¶ 1(C)). Per the NDA, its obligations do not apply to Confidential Information which:

1. is or becomes publicly known through no wrongful act of the receiving party; or
2. was in the public domain at the time it was disclosed to the receiving party; or
3. was known to the receiving party at the time it was disclosed; or
4. is or was rightfully received from another without any breach of this Agreement; or
5. is independently developed by the receiving party; or
6. is approved for release by prior written authorization of the discloser; or
7. is required by operation of law to be disclosed.

(Id.)

During the April 17, 2017, meeting, Gallo disclosed his Trade Secrets to DiversiTech based upon an understanding that DiversiTech "would honor its contractual duty not to use or disclose the Trade Secrets to the public unless the parties agreed to a business relationship under which DiversiTech could do so." (Am. Compl. ¶ 28.) A week later, Gallo sent a follow-up email to DiversiTech containing the Trade Secrets he provided at the April 17, 2017, meeting. The plaintiffs again assert that Gallo disclosed the Trade Secrets "with an understanding that DiversiTech would keep the Trade Secrets confidential as required by the NDA." (Id. ¶ 29.)

Between June and November 2017, CDC Products and DiversiTech met in person and negotiated over the terms governing a new license agreement that would include similar distribution rights and royalties regarding the sale of the next generational tool as the original agreement between the parties. (Id. ¶ 30.) DiversiTech would again pay CDC Products a 10% royalty on sales, provided that CDC Products and Gallo entered into a non-compete agreement with DiversiTech for the duration of the new license agreement. (Id.) However, the parties never reached an agreement on the terms governing the marketing and royalty payment for the original 16 Gram Charles Gallo Gun. (Id.) Negotiations reached an impasse in 2018, and DiversiTech ceased all communications with Gallo and CDC Products. (Id. ¶ 31.)

The plaintiffs contend that after Gallo's negotiations with DiversiTech failed, he and his company CDC Products moved forward with their "long time business partner Innovative Products and Designs, Inc., a CO2 manufacturing and distribution company, to manufacture and distribute the new design for the 'Charles Gallo Gun.'" (Id. ¶ 32.) Gallo and Innovative Products and Designs then formed Quality Innovations, LLC. (Id.) Thereafter, Quality Innovations entered an exclusive distribution agreement with a third-party to market and sell the updated Charles Gallo Gun nationwide. (Id.) The plaintiffs assert that "[t]he third-party entered into the distribution agreement, in part, based on an understanding that Quality Innovations would be the only company manufacturing and selling a 20 Gram CO2 condensate drain cleaning tool." (Id.)

However, the plaintiffs maintain that before Quality Innovations could take the new design to market, DiversiTech misappropriated CDC Products' Trade Secrets and used it to undermine Gallo's efforts to enter and compete in the HVAC market in the sale of drain cleaning tools. (Id. ¶ 33.) DiversiTech then began manufacturing, marketing, and distributing a 20-gram CO2 cartridge tool embodying the designs disclosed under the NDA. (Id.) DiversiTech named its

6

product the "Big Shot," using a name that the plaintiffs allege was disclosed by CDC Products to appeal to technicians' interest in hunting and firearms. (Id.) The plaintiffs contend that DiversiTech improved components of its new product and priced it competitively as CDC Products had disclosed as part of its confidential business plan. (Id.) In doing so, DiversiTech knowingly misappropriated CDC Products' Confidential Information and breached the terms of the NDA, the plaintiffs assert. (Id. ¶ 34.)

DiversiTech began to sell the "Big Shot" in its distribution channels and displayed it at industry expos and conferences. (Id.) Again, the plaintiffs assert that DiversiTech's development and sale of its "Big Shot" product "resulted from DiversiTech's unauthorized use of the Trade Secrets disclosed by CDC [Products] under the NDA" and that DiversiTech lacked knowledge of CDC Products' new design for the Charles Gallo Gun before it obtained CDC Products' Trade Secrets under the NDA. (Id. ¶ 35.) Indeed, the plaintiffs contend that before CDC Products made its disclosures, DiversiTech "had no plan to modify the existing design of the Charles Gallo Gun to utilize a 20G $CO_2$ cartridge." (Id.) Moreover, it was only after CDC Products disclosed the Confidential Information to DiversiTech and when the competitive threat posed by CDC Products' new business plan became clear that "DiversiTech chose to significantly modify the design of its drain cleaning tool for the first time in twenty years by misappropriating CDC [Products'] design and business plans and interfer[ing] with Plaintiffs' effort to enter the HVAC market as a competitor, all in breach of the NDA." (Id.)

To this end, the plaintiffs note that (1) the NDA prohibits DiversiTech's unauthorized use of CDC Products' Trade Secrets for reasons that do not include "doing business together" and (2) CDC Products did not consent to DiversiTech's use of its trade secrets disclosed in confidence under the NDA. (Id. ¶¶ 36–37) (quoting Am. Compl. Ex. D, ¶ 1(A)) (alteration omitted). The

plaintiffs allege that "DiversiTech's wrongful acts prevented CDC [Products] and Quality Innovations from exclusively introducing its next generation Charles Gallo Gun to the market," which caused CDC Products and Quality Innovations to suffer lost sales, harmed reputation, and diluted brand recognition. (Id. ¶ 39.)

The plaintiffs further allege that after the License Agreement and Trademark Assignment both expired, DiversiTech changed the name of the original 16-gram Charles Gallo Gun to the "Drain Gun," but marketed and advertised it and related cartridges as "Charles Gallo Brand." (Id. ¶ 40.) Moreover, DiversiTech marketed CO2 refill cartridges for the "Drain Gun" as "SWOOSH," and also advertised them as "Charles Gallo Brand." (Id.) The plaintiffs contend that DiversiTech continues to use "Charles Gallo Brand" markings on packaging for its "Drain Gun" and cartridges. (Id.) DiversiTech also markets the original Charles Gallo Gun as the "Charles Gallo Drain Gun" on third-party shopping websites. (Id. ¶ 41.) Indeed, DiversiTech has knowingly and without Gallo's consent "continued to use the 'Charles Gallo' mark for marketing and advertisement purposes long after the Trademark Assignment and Licensing Agreement expired," the plaintiffs allege. (Id. ¶¶ 42–46.)

The plaintiffs contend that DiversiTech's "deceit and willful misconduct" has caused them irreparable harm and severely impaired their "ability to reap the commercial benefits using [their] next generation design and business plan for the Charles Gallo Gun" and has prevented them "from enjoying the commercial benefits of this novel design, Trade Secrets, and intellectual property rights." (Id. ¶ 47.) Additionally, the plaintiffs allege that DiversiTech has prevented Gallo, his company CDC Products, and Quality Innovations "from exploiting their exclusive Trade Secrets and intellectual property and has misappropriated and invaded those rights." (Id. ¶ 48.) The plaintiffs maintain that DiversiTech's breach of the NDA agreement has directly and proximately

8

caused them to suffer lost sales and irreparable harm to their reputations, goodwill, and brand recognition. (Id. ¶ 53.)

The Amended Complaint asserts five counts: (1) breach of a non-disclosure agreement; (2) false association/false endorsement; (3) false advertising of source and/or origin; (4) unfair competition; and (5) unauthorized use of Gallo's name and likeness.

## Procedural History

The plaintiffs filed this action on June 3, 2020. (ECF No. 1.) On July 30, 2020, DiversiTech filed both an Answer to the Complaint and a partial motion to dismiss. (ECF Nos. 13 and 15.) The court held a hearing on the partial motion to dismiss on November 20, 2020. At that hearing, the court announced it would grant the plaintiffs leave to amend the Complaint to address pleading deficiencies. The plaintiffs filed the Amended Complaint on December 11, 2020. (ECF No. 37.) That same day, the plaintiffs filed a motion for a preliminary injunction, but withdrew that motion on January 18, 2021. (ECF Nos. 38, 50.) On December 30, 2020, DiversiTech filed a partial motion to dismiss Count One of the Amended Complaint. (ECF No. 41.) The court held a telephonic hearing on January 28, 2021.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell

9

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Moreover, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [the motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Beacon Wireless Solutions, Inc. v. Garmin Intern., Inc., 2011 WL 4737404, at *7 (W.D. Va. Oct. 5, 2011) (Conrad, J.) (quoting McBurney v. Cucinnelli, 616 F.3d 393, 408 (4th Cir. 2010) (Agee, J., concurring in part and dissenting in part)) (second alteration in original). "Thus, the proper inquiry is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims." Id. (internal quotation marks and alteration omitted).

## Discussion

DiversiTech asserts that the plaintiffs have not adequately stated a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for breach of a non-disclosure agreement. Under Virginia law, to state a claim for breach of contract, a plaintiff must show: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 594 S.E.2d 610, 619 (Va. 2004). DiversiTech argues that the Amended Complaint "fail[s] to sufficiently allege each of these three necessary elements" and thus does not state a claim for breach of a non-disclosure agreement. (Def.'s Mem. Supp. Mot. Dismiss, ECF No. 42, at 2.) The court will address each element in turn.

I.      **LEGALLY ENFORCEABLE OBLIGATION**

DiversiTech argues that the plaintiffs have not adequately pleaded that DiversiTech owed an enforceable obligation under the NDA because the allegedly "Confidential Information" that Gallo provided DiversiTech was publicly known and thus not "confidential." (Def.'s Mem. Supp. Mot. Dismiss at 6.) DiversiTech raises several arguments on this front. First, DiversiTech contends that the plaintiff "fail to allege how the concept of a 20g CO2 cartridge was beyond the scope of what Gallo disclosed in his drain gun patents over 20 years ago." (Id.) To this end, DiversiTech points out that both Gallo's '101 Patent and '597 Patent note that "it should be readily understood that various changes and/or modifications can be made" to Gallo's drain gun design. Id. at 7) (quoting Am. Compl. Ex. A at 6:14-6:16; Am. Compl. Ex. B at 8:15–17.) Indeed, the '101 Patent suggests that "the pressurizing fluid source need not be limited to a miniature, pre-charged cartridge, but could comprise other pressurizing sources such as, for example, a somewhat larger pre-charged container or even a small hand pump." (Id.) (quoting Am. Compl. Ex. A at 6:17-6:22.)[1] DiversiTech contends that if it truly should be "readily understood" that a larger pre-charged container or hand pump could work as a substitute for a 16-gram CO2 cartridge, "then by logical extension it would also be 'readily understood' that one could use a widely available and similarly sized 20g CO2 cartridge instead." (Id.)

Next, DiversiTech asserts that "Plaintiffs' sole attempt to establish the concept of a 20g CO2 cartridge as confidential is their single allegation that '[n]o drain cleaner on the market was utilizing a 20g CO2 cartridge'" and that the plaintiffs fail to "allege how the general absence of a 20g CO2 cartridge product in the market could in any way suggest that plaintiffs' product design

---

[1] The court notes that the '597 Patent similarly suggests that the pressurizing fluid source need not be limited to a miniature, pre-charged cartridge, but could comprise other pressurizing sources such as, for example, a small hand pump provided at the end of the control housing in place of the cartridge housing." (Am. Compl. Ex. B at 8:18–22.)

11

and marketing information was not generally ascertainable by the public."[2] (Id.) (quoting Am. Compl. ¶ 23.) Finally, DiversiTech argues that the plaintiffs "fail to allege any facts explaining how commonsense product developments with 'improved durable components,' the securing of cost-effective parts, or a marketing strategy could possibly qualify as 'confidential information.'" (Id.) (quoting Am. Compl. ¶ 33.) Per DiversiTech, the plaintiffs ultimately "seek[] to impose confidential protection for a concept as simple as better parts at a cheaper cost," and the plaintiffs' "claimed marketing strategy is neither unique nor protectable." (Id. at 7–9.)

Because questions of fact underlie DiversiTech's arguments, the court concludes that dismissal at the Rule 12(b)(6) stage would be premature. While the Patents note that "it should be readily understood that various changes and/or modifications can be made" to Gallo's drain gun design, the court cannot, at this time, conclude that the Patents readily disclosed the use of a 20-gram $CO_2$ cartridge. (See Am. Compl. Ex. A at 6:14-6:22; Am. Compl. Ex. B at 8:15–21.) As the plaintiffs point out, the Patents make no mention of "the recommended size of the miniature, pre-charged $CO_2$ cartridge or 'container' for the apparatus, how the size of the cartridge could affect the design requirements for the chamber, or how the product should be redesigned to accommodate a different sized $CO_2$ cartridge." (Pls.' Mem. Opp'n. Mot. Dismiss, ECF No. 49, at 9–10.) Indeed, the fact that the Patents disclose the "general design of the Charles Gallo Gun . . . does not mean that all possible upgrades, modifications, and configurations around the patent

---

[2] The parties dispute whether it is proper for the court to take judicial notice of exhibits attached to DiversiTech's memorandum in support of its motion to dismiss. The exhibits each purport to show a "copy of a digitally archived webpage captured by the non-profit entity Internet Archive through its 'Wayback Machine' initiative," one from 2011 and one from 2013. (Decl. of Leah R. Bruno, ECF No. 42-1, at 1.) The archived webpages appear to show that 20-gram $CO_2$ cartridges were available for sale to the general public as early as 2011. Even assuming that judicial notice of the exhibits is appropriate, the court concludes that they do not affect the outcome of this motion. While the exhibits appear to show 20-gram $CO_2$ cartridges for sale in 2011 and 2013, they do not show the cartridges for sale in the HVAC context, but instead for "cycling and motor sport needs" and "for the Mountain Bike rider" (See Def.'s Mem. Supp. Mot. Dismiss Ex. 1, ECF No 42-1, at 1; Ex. 2, ECF No. 42-1, at 1.) The court therefore considers the exhibits inapposite at this stage.

disclosure were also 'public knowledge' by implication." (Id. at 10.) The court notes that nothing in the text of either Patent mentions outright a 20-gram CO2 cartridge, and whether the Patents readily contemplated such a modification is a question of fact better addressed at summary judgment or trial than at the Rule 12(b)(6) stage.

Additionally, the court does not agree that (1) the Amended Complaint's assertion that "[n]o drain cleaner on the market was utilizing a 20g CO2 cartridge" fails to support the notion that the information disclosed in the April 17, 2017, meeting was confidential, or (2) that the plaintiffs' proposed developments and marketing plan were "commonsense" and thus "neither unique or nor protectable." (Def.'s Mem. Supp. Mot. Dismiss at 7–9.) Simply put, without the benefit of discovery, the court cannot ascertain at this stage whether the proposed improvements and business strategy the plaintiffs disclosed at the April 17, 2017, meeting were too "commonsense" to qualify for protection under the NDA.

The Amended Complaint alleges that based on their industry knowledge and research, the plaintiffs designed a new drain gun utilizing a 20-gram cartridge and "improved durable components," along with a new marketing and business strategy. (See Am. Compl. ¶ 23.) The Amended Complaint also alleges that the plaintiffs kept these planned improvements secret prior to their disclosure at the April 17, 2017, meeting. (Id. ¶ 24.) The court therefore concludes that the plaintiffs have adequately pleaded an enforceable obligation by DiversiTech under the NDA to keep such information confidential.

## II. **BREACH**

DiversiTech next argues that even if the plaintiffs have adequately pleaded an enforceable obligation under the NDA, they have not shown that DiversiTech breached the obligation. (Def.'s Mem. Supp. Mot. Dismiss at 9.) DiversiTech maintains that the plaintiffs offer only vague and

conclusory allegations for this element and fail to allege with particularity how DiversiTech breached the NDA. (Id.)  For the following reasons, the court disagrees, and finds that the plaintiffs have adequately pleaded breach of the NDA.

As the plaintiffs note, the Amended Complaint alleges that DiversiTech improperly "used" the information the plaintiffs disclosed in the April 17, 2017, meeting, and "began manufacturing, marketing and distributing a twenty gram CO2 cartridge tool that embodies the designs disclosed under the NDA," and which DiversiTech named "the Big Shot."  (Am. Compl. ¶¶ 33, 35.)  The Amended Complaint also alleges that DiversiTech's "Big Shot" product "resulted from DiversiTech's unauthorized use of the Confidential Information," that "DiversiTech misappropriated the Confidential Information and used it to make the 'Big Shot,'" and that "DiversiTech breached the NDA by disclosing and using the Confidential Information in its rollout of the 'Big Shot.'"  (Am. Compl. ¶¶ 33, 35, 52.)  Against this backdrop, the court concludes that the Amended Complaint adequately pleads breach of the NDA and that dismissal would be inappropriate at this stage.

### III.   DAMAGES

Lastly, DiversiTech asserts that the plaintiffs have failed to adequately plead cognizable damages.  (Def.'s Mem. Supp. Mot. Dismiss at 11.)  DiversiTech contends that the plaintiffs offer only two conclusory allegations on this element: (1) that "CDC [Products] and Quality innovations have lost sales, their reputations have been harmed, and their brand recognition has been diluted"; and (2) that "CDC and Quality Innovations have not only lost sales due to DiversiTech's competing product, but their reputation and goodwill continues to be irreparably harmed and brand recognition continues to be irreparably diluted."  (Id.)  DiversiTech further asserts that the plaintiffs have failed to allege even a single fact "to support even an inference that can be reasonably drawn

in their favor to conclude <u>they</u> in fact suffered the alleged damages," meaning their claims cannot withstand Rule 12(b)(6) scrutiny. (<u>Id.</u>)

Again, the court finds the allegations in the Amended Complaint sufficient to survive the motion to dismiss. The Amended Complaint alleges lost sales and irreparable harm to the plaintiffs' reputations, brand recognition, and goodwill, all sufficient to plead damages suffered due to DiversiTech's alleged misconduct. (<u>See</u> Am. Compl ¶ 39.) The Amended Complaint further points to "irreparable harm to Plaintiffs' ability to reap the commercial benefits of using its next generation design and business plan for the Charles Gallo Gun and from enjoying the commercial benefits of this novel design, Confidential Information, and business plans and intellectual property rights." (Am. Compl. ¶¶ 39, 47.) The court therefore finds no merit in DiversiTech's assertion as to damages.

## Conclusion

For the reasons stated, DiversiTech's partial motion to dismiss is **DENIED**.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This  10th  day of February, 2021.

*/s/ Glen Conrad*
Senior United States District Judge